**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BACOS, ALIN POP, and ANDREI TOMESCU, individually and on behalf of all those similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 26 C 3706** |
| **CALABASAS BEVERAGE COMPANY, LLC and K&SODA INC d/b/a 818 SPIRITS INC.** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Robert Bacos, Alin Pop, and Andrei Tomescu filed suit individually and on behalf of proposed nationwide and multi-state classes against Calabasas Beverage Company, LLC and K&Soda, Inc. d/b/a 818 Spirits, Inc. (818). The plaintiffs have alleged violations of the Illinois Consumer Fairness Act (ICFA), the Illinois Uniform Deceptive Trade Practices Act (DTPA), the Minnesota Prevention of Consumer Fraud Act (MPCFA), the Minnesota False Statement in Advertising Act (MFSAA), and the Wisconsin Deceptive Trade Practices Act (WDTPA), as well as negligent misrepresentation, and unjust enrichment.

818 sells tequila products throughout the United States, three of which are relevant to this case—818 Tequila Blanco, 818 Tequila Reposado, and 818 Tequila Añejo. The plaintiffs allege that 818 misleadingly represents on product labels and in

marketing statements that its tequilas are "100% agave," when in fact they contain alcohol derived in material part from non-agave sources. Compl. ¶ 12. The plaintiffs allege that 818 similarly misrepresents on product labels and in marketing statements that its tequilas are "handcrafted" and "small batch," when in fact they are made at a "large-scale industrial distillery" with "minimal manual involvement." Compl. ¶¶ 50–51. The plaintiffs assert that they paid a price premium for 818 tequila in reliance on the "100% agave," "small batch," and "handcrafted" representations and that if 818 had disclosed the composition and production process of 818 tequila, they would not have purchased the product or would have paid less for it. Compl. ¶¶ 70–71.

818 has moved to dismiss all of the plaintiffs' claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). In the alternative, 818 asks the Court to abstain under the international comity and act of state doctrines or strike the plaintiffs' nationwide class allegations. 818 has submitted foreign-law materials in support of its motion to dismiss, pursuant to Federal Rule of Evidence 201(b) and Federal Rule of Civil Procedure 44.1. Because these submissions supply the extrinsic foundation upon which most of 818's arguments for dismissal rely, the Court considers them before turning to the motion to dismiss.

## Discussion

### A. Judicial notice and Rule 44.1 notice

#### 1. Judicial notice

Federal Rule of Evidence 201(b)(2) permits a court to judicially notice "matters of public record without converting a motion for failure to state a claim into a motion for summary judgment" if they are "not subject to reasonable dispute and either 1)

generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *General Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997) (citation omitted). The Court may take "judicial notice of public records and government documents, including those available from reliable sources on the Internet." *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 839 n.4 (N.D. Ill. 2018), *aff'd*, 926 F.3d 409 (7th Cir. 2019). A court applying Rule 201 may notice the existence and issuance of a public record without accepting the truth of its contents. *Cf., e.g.*, *Cal. Sportfishing Prot. Alliance v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038–39 (N.D. Cal. 2017) ("Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed . . . .").

818 asks the Court take judicial notice of the following: Certificates of Label Approval (COLAs) issued by the U.S. Alcohol and Tobacco Tax and Trade Bureau (TTB) for 818 Reposado, 818 Añejo, and 818 Blanco (Aug. 13, 2021), Dkt. 17-3; a Certificate of Authenticity for Export of Tequila (CAET) issued by Consejo Regulador del Tequila (CRT), A.C. to Grupo Solave, S.A. DE C.V.,[1] Dkt. 17-4; a letter issued by the General Directorate of Standards of Mexico's Secretariat of Economy on October 24, 2025 (the GDS letter), Dkt. 17-5; the 818 public website, 818 Tequila, *Our Story*, https://drink818.com/pages/our-story (last visited by defense counsel June 5, 2026); and the official website of the CRT, CRT, *Certification Body*,

[1] Grupo Solave is the Mexican distillery where 818 tequila is produced. *See* Compl. ¶ 43.

https://www.crt.org.mx/en/certification-body/ (last visited by defense counsel June 5, 2026).

**a. The 818 tequila COLAs and the Grupo Solave CAET**

The TTB, a U.S. government agency, issues COLAs after reviewing and certifying product labels for compliance with federal labeling regulations. Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 3. The CRT is a private entity in Mexico that is authorized by the Mexican government to regulate tequila production, certification, and exportation. The CRT issues CAETs to Mexican distillers to certify that the distiller has complied with Mexican law and tequila production and export standards. Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 4–5. The plaintiffs do not dispute the existence or authenticity of the COLAs or the Grupo Solave CAET, and they do not object to the Court taking judicial notice of the fact that these certificates were issued. *See* Pls.' Resp. at 29. The plaintiffs object only that 818 impermissibly offers the certificates to prove a legal conclusion and a disputed fact, respectively. *Id.* 818 clarifies in reply that it is asking the Court to take judicial notice only of the fact that the certificates were issued. Def.'s Reply at 19–20. The Court therefore takes judicial notice of the existence and issuance of the COLAs and CAET without accepting the truth of any disputed facts the certificates reference.

**b. The GDS letter**

The GDS letter is an official Mexican administrative adjudication of a complaint related to SNIF-NMR testing of tequila, which is the testing method the plaintiffs rely on to allege the presence of non-agave alcohol in 818 tequila. Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 6; Compl. ¶ 59. The plaintiffs object that 818

impermissibly offers the GDS letter for the truth of a disputed scientific opinion. Pls.' Resp. at 30. 818 again clarifies in reply that it is asking only that the Court take judicial notice of the existence and issuance of the GDS letter. Def.'s Reply at 20.

The plaintiffs also object to the GDS letter because it "state[s] conclusions rather than the underlying data, analyses, or validation that would allow the Court to confirm them, so their truth cannot be 'accurately and readily determined' from the documents themselves.'" Pls.' Resp. at 31. But this assumes that 818 is offering the GDS letter to establish the truth of a disputed scientific opinion about the reliability of SNIF-NMR testing. That is not the case. As just noted, 818 offers the GDS letter only to show that Mexico has officially taken a regulatory position on the disputed scientific opinion. The plaintiffs do not dispute the authenticity of the GDS letter. The Court takes judicial notice of the existence and issuance of the GDS letter without accepting the truth of any disputed facts or scientific opinion it references.

**c. The 818 website**

The "Our Story" webpage on 818's public website outlines how 818 tequila is produced and displays photographs and descriptions of 818's distillery and production facilities. Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 6. A court may take judicial notice of "undisputed material hosted on a party's public website." *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 431 n.3 (N.D. Ill. 2019). Moreover, the incorporation-by-reference doctrine provides that "a court may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (alteration in original) (citations omitted)

(quotations omitted).

In their complaint, the plaintiffs reference descriptions of the Grupo Solave facility and production methods that appear on the Our Story webpage. Compl. ¶¶ 13, 43; *id.* n.1. Some parts of the Our Story webpage describe an industrialized tequila production process, and others describe more traditional tequila production methods. The plaintiffs cite both descriptions at different points in their complaint. *Contrast* Compl. ¶ 13 ("On its website, Defendant 818 Spirits Inc. states: 'In 2021, we moved our production to a brand-new, state-of-the-art distillery in Jalisco at Grupo Solave. . . .'"), *with* Compl. ¶ 43 ("The brand describes [on its official website] a single production process in which agaves from the Tequlia region are slow-cooked in traditional ovens, crushed using stone tahona extraction, fermented with native yeast, and distilled in copper alembic pot stills."). The parts of the webpage describing industrialized tequila production methods are central to the plaintiffs' claims relating to the "small batch" and "handcrafted" representations because the plaintiffs allege that those representations are falsified by 818's industrialized production process. *See id.* ¶ 13. The parts of the webpage describing traditional tequila production methods likewise bear on the plaintiffs' claims relating to the "small batch" and "handcrafted" representations because the plaintiffs allege that those parts of the webpage reinforce the misleading nature of the "small batch" and "handcrafted" representations. Thus the portions of the Our Story webpage describing the Grupo Solave distillery are effectively incorporated by reference into the plaintiffs' complaint.[2]

---

[2] The plaintiffs object that the complaint references the 818 website as it existed on March 4 and March 11, 2026, while defense counsel last visited the 818 website on

The plaintiffs nonetheless object that 818 impermissibly relies on the Our Story webpage to prove the disputed facts that 818's tequila production is consistent with "handcrafted" and "small batch" labeling and that the "100% agave" representation is accurate. Pls.' Resp. at 31. 818 clarifies in reply that it relies on the Our Story webpage to show what information was publicly available before the plaintiffs' purchases, just as the plaintiffs do in the complaint. Def.'s Reply at 20. The Court takes judicial notice of the undisputed fact that 818's public website displays marketing statements about its production process, without accepting the truth of those statements.

**d. The CRT website**

The CRT's website is available to the public and describes its role certifying compliance with the Mexican Official Standard for tequila specifications, the acronym for which is NOM. Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 7. The plaintiffs object that 818 impermissibly offers the CRT website to prove the disputed facts that 818's tequila production process is consistent with "handcrafted" and "small batch" labeling and that the "100% agave" representation is accurate. Pls.' Resp. at 31. 818 clarifies in reply that it offers the CRT website only to show the CRT's accreditation and regulatory role. Def.'s Reply at 20.

A court may take judicial notice of information from official government websites. *See Laborer's Pen. Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002). The Court recognizes that there is some gray area about whether the CRT's public website qualifies as an official government website, given that the CRT is a

---

June 5, 2026. Pls.' Resp. at 31–32. The Court finds this objection unpersuasive, as the plaintiffs make no argument that the website was altered between those dates.

private civil entity authorized by the Mexican government to certify compliance with Mexico's tequila NOM. But the plaintiffs do not dispute the accuracy of the description of the CRT's certification functions on the CRT website, and the Court can find no controlling authority holding that the official website of a private entity specifically authorized by a government to perform regulatory functions does not qualify as an official government website. Thus the Court takes judicial notice of the description of the CRT's certification functions on the CRT website.

**2. Rule 44.1 notice of intent to rely on foreign law**

In connection with its motion to dismiss, 818 provided notice under Federal Rule of Civil Procedure 44.1 of its intent to rely on Mexican law and regulatory sources. *See* Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 8. In particular, 818 provided notice of its intent to rely on the CAET, Dkt. 17-4, and GDS letter, Dkt. 17-5, for which it also requested judicial notice under Federal Rule of Evidence 201(b), as well as two additional sources: the Mexican Official Standard for tequila specifications (the tequila NOM), Dkt. 17-6, and a March 2026 letter from two CRT commissioners regarding a different tequila brand's "100% agave" certification with an annex of related Mexican legal materials (the CRT letter), Dkt. 17-7. Def.'s Req. for Judicial Notice and Rule 44.1 Notice at 8–9.

The plaintiffs do not object to the Court's consideration of the tequila NOM or the Mexican legal materials annexed to the CRT letter as sources for determining the content of Mexican law. Pls.' Resp at 32. The plaintiffs' objections to the Court's consideration of the CAET, the GDS letter, and the CRT letter are somewhat opaque but seem to be rooted in concern that the Court will use those materials to "determine,

on the pleadings, the adjudicative fact of whether 818 Tequila complies with [Mexican] law." Pls.' Resp. at 32.

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. "As the final arbiter of the law—both foreign and domestic—the Court maintains 'great discretion' in choosing its source materials, and may give these materials 'whatever probative value [it] thinks they deserve.'" *Siswanto v. Airbus Ams., Inc.*, No. 15 C 5486, 2016 WL 7178460, at *5 (N.D. Ill. Dec. 9, 2016) (alteration in original) (citations omitted). The CAET, Dkt. 17-4, the GDS letter, Dkt. 17-5, the tequila NOM, Dkt. 17-6, and the CRT letter, Dkt. 17-7, are properly submitted under Rule 44.1 as sources bearing on the content and operation of Mexico's regulatory regime. The Court acknowledges that because the CAET, the GDS letter, and the CRT letter apply and opine on the tequila NOM, those exhibits contain both factual and legal assertions. The Court will distinguish between the two when determining the content of Mexican law.

**B. Article III standing**

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431. "At the pleading stage Article III standing is something to be alleged, not proved." *United States v. Funds in*

*the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013).

818 raises four challenges to the plaintiffs' standing. First, 818 argues that the plaintiffs have not plausibly alleged a concrete economic injury. Second, 818 argues that the plaintiffs have not suffered an injury in fact with respect to 818's reposado and añejo tequilas, which they did not purchase. Third, 818 argues that the plaintiffs cannot represent a multi-state subclass because they have not suffered an injury in fact in states other than Wisconsin (Bacos), Illinois (Tomescu), and Minnesota (Pop). Fourth, 818 argues that the plaintiffs do not have standing to pursue injunctive or declaratory relief because they are now aware of the alleged falsity of 818's challenged label representations and thus could not be deceived in the future.

**1. Injury in fact**

818 argues that the plaintiffs have not plausibly alleged injury in fact for two reasons. First, 818 argues that the plaintiffs have not alleged injury in fact because they did not test the specific bottles of tequila that they themselves purchased and have not plausibly alleged the sort of widespread defect that would justify extrapolating the third-party test results to every bottle of 818 tequila. Def.'s Mot. to Dismiss at 6. Second, 818 argues that even if the Court were to credit the plaintiffs' testing allegations, the plaintiffs fail to allege that they were harmed by 818's alleged mislabeling because they do not allege that 818 tequila did not deliver the premium drinking experience for which they paid a premium price.

Two points are worth clarifying at the outset. First, 818 relies almost exclusively on contamination defect cases that have no application in this case given that the plaintiffs allege a uniform adulteration of all 818 tequila. *See In re Recalled Abbott*

*Infant Formula Products Liability Litig.*, 97 F.4th 525, 529 (7th Cir. 2024). The Seventh Circuit has long recognized that a universal defect that diminishes a product's value gives rise to a concrete and particularized economic injury that confers standing, *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011); *id.*, and in this regard it distinguishes universal defect cases from contamination cases, *In re Recalled Abbott Infant Formula*, 97 F.4th at 529–30. For standing purposes, universal defect claims differ from contamination defect claims in relevant part because a court can infer from the allegation that the defect is universal that the item purchased by the plaintiff was defective. In the case of a universal defect, a plaintiff who did not test her own purchase may allege that she was injured because she purchased a product that is subject to a uniform defect. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d at 751.

Contamination claims, in contrast, typically involve sporadic or episodic defects (i.e., defects that are present in some but not all units of a given product) that are caused by specific instances of contamination that occurred during the manufacturing process. *See In re Recalled Abbott Infant Formula*, 97 F.4th at 527. In a case of that type, a court cannot infer from the allegation that some units were contaminated that the particular unit purchased by the plaintiff was contaminated. As a result, a plaintiff in such a case who did not test her own purchase must allege that she was injured because she purchased a product that carried "a risk of a defect." *In re Recalled Abbott Infant Formula*, 97 F.4th at 530 (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)). To do that, a plaintiff has to allege that some of the products she purchased were contaminated or plead facts plausibly indicating that the contamination was sufficiently widespread to affect any given unit of a product, including the units the

plaintiff purchased. *Id.* at 529.

This case is not reasonably classified as a contamination case. Nothing in the complaint suggests that the primary defect in this case, the presence of non-agave alcohol in 818 tequila, resulted from sporadic contamination. Indeed, the plaintiffs affirm in their response to the motion to dismiss that they contend that all 818 tequila products contain non-agave alcohol. *See* Pls.' Resp. at 3–4. And that is the way their complaint reads. 818 argues that the plaintiffs' allegations do not foreclose the possibility that the alleged defect could have resulted from contamination or a testing anomaly, Def.'s Reply at 2, but that is not enough to make the plaintiffs' universal defect allegations akin to contamination allegations.

Second, the plaintiffs allege economic injury under the price-premium theory of injury. In other words, they contend that they paid a premium price but received a less-than-premium product that was worth less than the price they paid. They do not rely on the benefit-of-the-bargain theory of injury, namely a contention that they were denied the benefit of their bargain because they purchased a product that did not work as intended. *See* Compl. ¶¶ 68–74. The price-premium and benefit-of-the-bargain theories of injury address distinct harms and have different pleading requirements. *See Richburg v. ConAgra Brands, Inc.*, No. 22 C 2420, 2023 WL 1818561, at *5 (N.D. Ill. Feb. 8, 2023) ("Whether plaintiffs have established standing under the price-premium theory is a separate issue [from whether the plaintiffs have established standing under the benefit-of-the-bargain theory].") The plaintiffs contend that they were injured because they paid for a 100% agave, small-batch, handcrafted tequila they did not receive. *See* Compl. ¶¶ 68–74. The Court does not read their complaint as alleging

that they were injured because 818 tequila did not deliver a premium drinking experience or otherwise did not work as intended.

In sum, the plaintiffs sufficiently allege that they paid a premium price for a product that was worth less than that price due to a product-wide defect.

Having established what the plaintiffs are alleging, the Court considers whether those allegations are sufficient to show a concrete economic injury. At this stage, the plaintiffs need not prove with certainty that the bottles of tequila they purchased were not in fact 100% agave. Rather, they need only plausibly allege that 818 tequila generally contains non-agave alcohol and that they paid a premium price for 818 tequila based on at least one of the challenged representations. *See Richburg*, 2023 WL 1818561, at *5.

818's primary contention appears to be that the plaintiffs cannot sufficiently allege that they were injured absent an allegation that they tested the specific bottles of tequila that they purchased. 818 finds support for this argument primarily in caselaw involving contamination allegations, which differ from this case, and out-of-circuit precedent not binding on this Court.[3] *See* Def.'s Mot. to Dismiss at 5–7; Def.'s Reply at 1–3. Plaintiffs are not required to test their own purchases to establish standing, even under 818's own cited authorities. *See Soto v. GNC Holdings. LLC*, No. 24 C 3613, 2025 WL 662135, at *3 (N.D. Ill. Feb. 28, 2025) ("It bears emphasizing that the named plaintiff need not necessarily purchase a product and test it to establish standing."); *see also Richburg*, 2023 WL 1818561, at *5.

---

[3] 818 cites one decision from a court in this District that adopted the out-of-circuit standard as persuasive authority.

Moreover, the plaintiffs have plausibly alleged that all 818 tequila contains non-agave alcohol. They allege that third-party testing of 818 Tequila Blanco indicated the presence of non-agave alcohol. Compl. ¶¶ 58, 63. For present purposes at least, these test results can reasonably be extrapolated to all other bottles of 818 Tequila Blanco, including those purchased by the plaintiffs, because the plaintiffs allege that all 818 tequila products are produced at the same distillery via the same distillation and fermentation process. *See* Compl. ¶ 46 ("All 818 Tequila products sold in the United States are produced at the same distillery, bottled at the same bottling facility, and imported into the United States and introduced into the stream of commerce by the same importing entity."); *id*. ¶ 43 (818's official website and marketing materials "describe[ ] a single production process in which agaves from the Tequila region are slow-cooked in traditional ovens, crushed using stone tahona extraction, fermented with native yeast, and distilled in copper alembic pot stills."). The 818 Tequila Blanco test results can similarly be extrapolated, again for present purposes, to 818 Tequila Añejo and 818 Tequila Reposado, because añejo and reposado tequilas are "produced by aging tequila blanco in oak barrels for defined periods, rather than through any separate fermentation or distillation process." Compl. ¶ 67. Accepting these well-pleaded factual allegations as true and drawing reasonable inferences in favor of the plaintiff as the Court must when deciding a motion to dismiss, the plaintiffs have plausibly alleged that all 818 tequilas contain non-agave alcohol.[4]

---

[4] 818 sought leave to supplement its motion to dismiss with *Pusateri v. Diageo North America, Inc.*, No. 25 C 2482 (E.D.N.Y. Sept. 30, 2026), in which a court dismissed for lack of standing consumer fraud allegations against a different producer of tequilas labeled "100% de Agave." *Id.* at 2, 10. *Pusateri* is non-binding authority, and it does not buttress 818's lack of standing arguments. In *Pusateri*, the court determined that

The plaintiffs' allegations that they paid a price premium for 818 tequila in reliance on label representations are also sufficient to pass muster. Each plaintiff purchased one bottle of 818 Tequila Blanco "after reading the representations on the bottle stating that the product was '100% Agave,' 'small batch,' and 'handcrafted,' . . . believing it to be made from 100% agave, made in a small batch and handcrafted." Compl. ¶¶ 75–77. The plaintiffs allege that they paid a price premium for 818 Tequila products marketed as "100% agave," "small batch," and "handcrafted" and that they would not have purchased the tequila or paid a lower price for the tequila had they known the tequila's true composition and production methods. Compl. ¶¶ 70–71. Nothing more is required to adequately allege a price premium overpayment.

In sum, the plaintiffs have plausibly alleged that they suffered a concrete economic injury.[5]

**2. Unpurchased products (818 Tequila Reposado and 818 Tequila Añejo)**

818 argues that the plaintiffs lack standing to assert claims related to 818 Tequila

---

the plaintiffs' allegations of independently commissioned testing of unpurchased bottles and news reporting of widespread mislabeling across the tequila industry writ large were insufficient to allege systemic adulteration by the defendants. *Id.* at 9–10. In this case, the plaintiffs have adequately alleged systemic adulteration vis-a-vis their common origin and common production allegations.

[5] 818's additional arguments regarding injury in fact also fail. Its argument that "the statistical improbability of [the plaintiffs] purchasing an adulterated unit falls below Rule 8's plausibility threshold," Def.'s Mot. to Dismiss at 7, is based on caselaw regarding contamination-based contentions, which is not what the plaintiffs allege in this case. 818's objection that the plaintiffs do not identify a valid price comparator, Def.'s Mot to Dismiss at 8, fails because the plaintiffs do not need to allege the precise premium paid to plead a price-premium injury. *See Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 987 (N.D. Ill. 2013).

Reposado and 818 Tequila Añejo because they only purchased bottles of 818 Tequila Blanco. Def.'s Mot. to Dismiss at 8. As an initial matter, nothing in the complaint indicates that Bacos, Tomescu, and Pop *themselves* seek relief for products they did not personally purchase. The Court does not read the complaint to allege, for example, that Bacos, Tomescu, or Pop seek to recover statutory damages for themselves for each and every bottle of 818 tequila that bears the challenged label representations, regardless of whether they purchased the bottles. *Cf. TransUnion*, 594 U.S. at 427–28 (explaining that an unharmed plaintiff may not "merely seek[ ] to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)"). To the contrary, the complaint identifies the specific item that each plaintiff purchased, a bottle of 818 Tequila Blanco. *See* Compl. ¶¶ 75–77.

The plaintiffs do, however, seek to represent a nationwide class of "all persons who purchased 818 Tequila in the United States [during the class period]" and a multi-state subclass of consumers who purchased 818 Tequila in states that have consumer protection statutes materially similar to those of plaintiffs' home states.[6] *Id.* ¶¶ 82–85. This class definition is broad enough to include class members who purchased 818 Tequila Reposado and 818 Tequila Añejo, even though the plaintiffs themselves did not.

In the Court's view, 818's argument boils down to a challenge to the plaintiffs' ability to represent class members who purchased 818 tequila products that the plaintiffs themselves did not. This is not a standing argument; it is an argument

[6] The putative multi-state subclass includes all consumers who purchased 818 tequila in the following states: Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Michigan, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, and Washington. *See* Compl. ¶¶ 82–85.

regarding class certification. As another court in this district has explained on this issue:

> If the named plaintiff has standing, and if the putative class members would have standing in their own right, then there does not appear to be any Article III problem with the named plaintiff representing the class. If everyone suffered an injury, everyone would have standing. (Put aside the other standing requirements.)
>
> There might be a typicality problem, or a commonality problem, or an adequacy of representation problem under Rule 23 if the products are different in a meaningful way. A named plaintiff cannot represent people who sit in a different seat. Rule 23 requires the named plaintiff and the class members to be similarity situated, so meaningful differences can raise eyebrows at the class certification stage.

*Curtis v. 7-Eleven, Inc.*, No. 21 C 6079, 2022 WL 4182384, at *8 (N.D. Ill. Sept. 13, 2022).

The Court acknowledges that some courts have analyzed this issue as implicating Article III's injury-in-fact requirement. Even so, "the majority of courts that have considered the issue 'hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) (collecting cases); *see also Curtis*, 2022 WL 4182384, at *8 ("Courts around the country have recognized a named plaintiff's standing to represent a putative class of purchasers who bought substantially similar products." (internal citations omitted)).

The allegations in the complaint, if proven, are sufficient to establish that 818 Tequila Reposado and 818 Tequila Añejo contain the same non-agave alcohol as 818 Tequlia Blanco and were produced using a similarly industrialized production method. The plaintiffs allege that two tests of 818 Tequila Blanco indicated the presence of non-agave alcohol. Compl. ¶¶ 63, 64. And they allege that all 818 tequila products sold in

the United States are produced "at the same distillery, bottled at the same bottling facility, and imported into the United States and introduced into the stream of commerce by the same importing entity." Compl. ¶ 46. The plaintiffs say that under standard tequila production methods, both reposado and añejo tequilas are produced by aging tequila blanco in oak barrels for defined periods, rather than through any separate fermentation or distillation process. *Id.* ¶ 67. Because 818 Tequila Blanco allegedly contains non-agave alcohol, and 818 Tequila Blanco is aged to produce 818 Tequila Reposado and 818 Tequila Añejo, one may plausibly infer that 818 Tequila Reposado and 818 Tequila Añejo contain the same non-agave alcohol found in the tested bottles of 818 Tequila Blanco.

Moreover, the alleged misrepresentation is the same for all three 818 Tequila products: the labels for 818 Tequila Blanco, 818 Tequila Reposado, and 818 Tequila Añejo all represent that the tequila inside is "100% agave," "handcrafted," and "small batch." Dkt. 17-3 at 4–5, 9–10, 13–14. Even the courts that have considered this as an issue regarding standing have found that standing is secure under similar circumstances. *See Ulrich*, 2017 WL 3581183, at *6 (collecting cases); *see also Curtis*, 2022 WL 4182384, at *8.

**3. Multi-state subclass**

818 next argues that the plaintiffs lack standing to bring claims involving states where they did not reside or purchase products. The plaintiffs live in Illinois, Minnesota, and Wisconsin, and each purchased 818 tequila in their home state. 818 argues that the plaintiffs cannot assert claims under the consumer protection statutes of twenty-two additional states included in the multi-state class because they have "no connection" to

those states and "suffered no injury under their laws." Def.'s Mot. to Dismiss at 10. Again, the Court views this as a challenge to the plaintiffs' "'ability under Rule 23 to represent the multi-state class'—a question best left for class certification—rather than a question of standing." *Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *4 (N.D. Ill. Sept. 6, 2017) (Kennelly, J.) (quoting *Halperin v. Int'l Web Servs.*, LLC, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015)); *see also, e.g.*, *Batton v. Nat'l Ass'n of Realtors*, No. 21 C 430, 2024 WL 689989, at *4 (N.D. Ill. Feb. 20, 2024); *Bonahoom v. Staples, Inc.*, No. 20 C 1942, 2021 WL 1020986, at *3 (N.D. Ill. March 17, 2021); *Alea v. Wilson Sporting Goods Co.*, No. 17 C 498, 2017 WL 5152344, at *6 (N.D. Ill. Nov. 7, 2017); *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1000 (N.D. Ill. 2017). As the Seventh Circuit has explained, the "application of choice-of-law principles" involved in determining whether any named or unnamed class member can state a claim under a particular state's laws "has nothing to do with *standing*, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be." *Morrison v. YTB Int'l., Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

**4. Injunctive and declaratory relief**

Finally, 818 argues that the plaintiffs do not have standing to pursue injunctive or declaratory relief because they "allege one-time purchases and no intent to buy 818 Tequila again." Def.'s Mot. to Dismiss at 10. The plaintiffs concede that they have not alleged a likelihood of future harm but insist that they "have the factual basis to allege that they would purchase 818 Tequila again if it were truthfully labeled, and that they presently cannot rely on the label to know whether the product conforms to its '100%

agave' claim." Pls.' Resp. at 9.

The plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC*, 594 U.S. at 431. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also Richburg v. Conagra Brands, Inc.*, No. 22 C 2421, 2023 WL 1818561, at *5 (N.D. Ill. Feb. 8, 2023) (ruling that plaintiffs' allegation that they would purchase a defendant's products again in the future if the defendant "t[ook] corrective action" "presuppose[d] injunctive relief, rather than compell[ed] it"). Because the plaintiffs are "now aware of [818'] sales practices," they are "not likely to be harmed by the practices in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014); *see also Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017) (ruling that a plaintiff lacked standing to pursue injunctive relief for an ICFA deceptive practices claim because "he [was] fully aware of the fact that [the alleged therapeutic remedy at issue] [was] nothing but sugar water").

The plaintiffs' proposed amendments would not cure their lack of standing to pursue injunctive relief. Even if plaintiffs intend to purchase 818 tequila again, they are unlikely to suffer future injury because they are now aware that the "100% agave," "handcrafted," and "small batch" claims are false. Specifically, taking the factual allegations in the complaint are true, the plaintiffs are now aware that 818 tequila contains non-agave alcohol and is produced at scale in an automated industrialized distillery. The plaintiffs are therefore not likely to be misled reading the "100% agave,"

"handcrafted," or "small batch" claims on a bottle of 818 Tequila in the future. *See Camasta*, 761 F.3d at 741.

The plaintiffs also seek leave to add the allegation that they "presently cannot rely on the label to know whether [818 tequila] conforms to its 100% agave claim," which they argue is "an ongoing injury that injunctive relief can redress." Pls.' Resp. at 9–10. In the Court's view, *Camasta* largely forecloses this argument. Because the plaintiffs are now aware that the representations on 818's labels are false, they do not need a label to tell them that 818 tequila is not in fact 100% agave. Moreover, any injunctive relief in this case would require only that 818 stop misrepresenting 818 tequila as "100% agave" if it in fact contains alcohol from non-agave sources. To comply, 818 could (1) keep the "100% agave" label representation and produce tequila that is in fact 100% agave, (2) remove the "100% agave" label representation and continue to produce tequila that is not in fact 100% agave, or (3) stop producing tequila altogether. Only the first option would result in a "100% agave" label that accurately represents the bottle's contents as 100% agave tequila, but 818 is under no state or federal obligation to produce 100% agave tequila, and the Court of course has no power to compel it to do so. *Cf. Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353, at *5 (N.D. Ill. Apr. 1, 2024) (Kennelly, J.) (distinguishing standing for injunctive relief where the defendant had a statutory obligation to remedy the alleged defect from standing where a defendant had no such obligation). The Court therefore concludes that the plaintiffs lack standing to pursue injunctive relief.

**B. Failure to state a claim**

To survive a motion to dismiss for failure to state a claim, "the plaintiff must

allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*

**1. Testing allegations**

Rule 9(b) requires pleading allegations of fraud with particularity. The Seventh Circuit has long described the requirements of Rule 9(b) as "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). 818 argues that the plaintiffs' testing allegations are subject to Rule 9(b)'s particularity requirement under the "how" heading because the "100% agave" representation can be misleading only if 818 tequila actually contains non-agave alcohol. *See* Def.'s Mot. to Dismiss at 11 ("[W]ithout test results showing non-agave alcohol in 818 Tequila, plaintiffs do not identify any alleged misrepresentation.").

The Seventh Circuit, however, has affirmed that Rule 9(b) applies to "*allegations* of fraud, not *claims* of fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) (emphasis added). Accordingly, the "how" that must be pled with particularity under Rule 9(b) in the Seventh Circuit is the "method by which the misrepresentation was communicated to the plaintiff." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1043 (N.D. Ill. Mar. 26, 2007) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). 818's formulation rests on a contradictory rule in the Ninth Circuit that the "how" that must be pleaded with particularity under Rule

9(b) is "the plaintiff's explanation for why the [representation] was misleading."[7]

The plaintiffs' allegations are sufficient under the Seventh Circuit's Rule 9(b) pleading requirements. The plaintiffs identify the representations ("100% Agave," "handcrafted," "small batch"), where they appeared (the front label and cap seal of each bottle), that each plaintiff read and relied on them before purchasing, the testing methodology (carbon isotope ratio analysis and NMR), the laboratory (Eurofins Analytics), the report (No. AR-26-AA-008787-01), and the result (alcohol derived at least in part from non-agave sources). Compl. ¶¶ 42, 58-66, 68-69, 75-77. The chain-of-custody, lot-number, and sample-selection details that 818 demands are evidentiary matters, not pleading requirements. *See Richburg*, 2023 WL 1818561 at *6 (The plaintiffs' allegations regarding testing methodology and analytics would be proper subjects for discovery, but addressing the defendant's attacks on the contextual details about the tests on a motion to dismiss would "require the court to inappropriately delve into the merits." (quotations omitted)); *see also Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 663–64 (N.D. Ill. 2024) (determining that allegations that expert testing of bed sheets labeled "800 thread count" revealed a lower count satisfied Rule 9(b)).

The plaintiffs' testing allegations satisfy Rule 9(b).

**2. Reasonable consumer allegations**

The state consumer protection laws at issue in this case are all governed by the reasonable consumer standard—each prohibits only those representations "likely to deceive reasonable consumers." *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir.

---

[7] 818 cites a case from this district reciting the Ninth Circuit's interpretation of Rule 9(b), but the court in that case was applying California law. *See* Def.'s Mot. to Dismiss at 11; Def.'s Reply at 7–8.

2024) (IFCA and UDTPA).[8] 818 argues that the plaintiffs fail to plausibly allege that any of the challenged representations would mislead a reasonable consumer. Def.'s Mot. to Dismiss at 14.

The reasonable consumer standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). "[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at 477. Claims based on "unreasonable or fanciful interpretations of labels" may be dismissed on the pleadings, but consumer protection laws do not impose on average consumers an obligation to question product labels as a lawyer would. *Id.* at 476 (citation omitted). Moreover, "[w]hat matters most [with respect to the reasonable consumer standard] is how real consumers understand and react to the advertising," *id.* at 476, and reasonable consumer behaviors are "matters of fact, subject to proof that can be tested at trial," *id.* at 481.

**a. "100% agave"**

The parties agree that for a tequila to be labeled "100% agave," it must be certified as such according to the standards set forth in Mexico's tequila NOM. 818 argues that a reasonable consumer would know that "100% agave" is a regulated trade designation and therefore would "understand [the '100% agave'] representation against

[8] *See also Song v. Champion Petfoods USA, Inc.*, No. 18 C 3205, 2020 WL 7624861, at *3 (MPCFA and MFSAA); *Bakery Bling v. Matrix Packaging Mach., LLC*, 685 F. Supp. 3d 718, 749 (E.D. Wis. 2023) (WDTPA).

the backdrop of the regulatory framework it reflects, not as a warranty of absolute chemical purity." Def.'s Mot. to Dismiss at 14.

It is at least an open question whether a reasonable consumer would know that "100% agave" is regulated trade designation governed by a Mexican regulatory standard. 818 cites no authority holding that, as a matter of law, a reasonable consumer would know that "100% agave" is a regulated trade designation and understand it by reference to Mexico's tequila NOM.

More fundamentally, the plaintiffs have alleged that the "100% agave" representation is misleading even if a reasonable consumer would understand it by reference to the tequila NOM, as they allege that 818 tequila does not qualify as 100% agave even under the tequila NOM. The tequila NOM requires that all tequilas labeled "100% agave" be distilled exclusively from sugars from the blue weber agave plant. *See* Dkt. 17-6 at 10. Other tequilas, such as mixto tequilas, may contain alcohol distilled from other sugars and still be labeled "tequila" but may not be labeled "100% agave." *See id.* at 9–10. Certain flavoring, aromas, sweeteners and coloring substances, however, may be added to 100% agave tequilas without impacting the 100% agave designation. *See id.* at 7, 9–10. Thus although "100% agave," understood as a regulated trade designation, does not literally mean that agave is the only ingredient in a bottle of tequila, it does mean that 100% of the alcohol in a bottle of tequila was distilled from agave sugars.

The plaintiffs allege that "[e]thanol derived from Blue Weber agave exhibits isotope signatures that differ measurably from ethanol derived from non-agave sources such as sugarcane or corn" and that "testing results for the analyzed 818 Tequila

products showed isotope signatures inconsistent with ethanol derived exclusively from agave." Compl. ¶¶ 62–63. Taking these allegations as true, even a consumer who understood "100% agave" by reference to the tequila NOM would be misled seeing "100% agave" on a bottle of 818 tequila. The plaintiffs have plausibly alleged that a reasonable consumer could be misled by the "100% agave" representation.

**b. "Handcrafted"**

818 next argues that no reasonable consumer would understand "handcrafted" to mean literally made by hand and that any possible ambiguity about the industrial nature of 818's production process could be cured by visiting 818's website.

818 is likely correct that no reasonable consumer would understand "handcrafted" to mean literally made by hand, but that is not the definition of "handcrafted" that the plaintiffs allege in the complaint. Rather, they allege that "'handcrafted' on a spirits label communicates that the product is made using traditional, small-batch methods with meaningful human involvement rather than automated industrial production." Compl. ¶ 8; *see also id.* ¶ 49 (handcrafted as "under constant supervision of a human"); *id.* ¶ 51 ("There is minimal manual involvement in the production of millions of gallons of alcohol annually. Distilling tequila at a facility producing millions of liters per year does not reasonably qualify as 'handcrafted' . . . ."). The plaintiffs allege that use of the term "handcrafted" represents to consumers that 818 tequila is not produced via automated industrial production. They contend that this representation is false because 818 tequila is produced at a "large-scale industrial distillery" with "minimal manual involvement." Compl. ¶¶ 50–51.

Courts in this district have found that "where a spirits manufacturer is a relatively

small brand, a consumer could reasonably believe that the phrase 'handcrafted' on the spirit's label means that it was not mass-produced." *Sava v. 21st Century Spirits, LLC*, No. 22 C 6083, 2024 WL 3161625, at *8 (N.D. Ill. June 25, 2024) (holding that alleged "handcrafted" misrepresentation could mislead a reasonable consumer) (quoting *Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 930–31 (N.D. Ill. 2015) (holding that alleged "handcrafted" misrepresentation could be viewed as deceptive by a reasonable consumer)). In contrast, courts in other districts considering alleged "handcrafted" misrepresentations by worldwide, mass-marketed alcohol brands such as Maker's Mark and Tito's vodka have determined that no reasonable person would understand "handmade" in the context of a worldwide brand to mean that the spirit was made by hand or without the use of substantial equipment. *See Salters v. Beam Suntory, Inc.*, No. 14 C 659, 2015 WL 2124939, at *2–3 (N.D. Fla. May 1, 2015); *Pye v. Fifth Generation, Inc.*, No. 14 C 493, 2015 WL 5634600, at *3 (N.D. Fla. Sept. 23, 2015).

818 likens itself to worldwide brands like Maker's Mark whiskey and Tito's vodka. The plaintiffs allege, however, that 818 has sold five million bottles of tequila over the past five years and "has not yet reached the level of mainstream recognition enjoyed by Patrón tequila, Jose Cuervo tequila, of Tito's vodka." Compl. ¶¶ 26, 53. The plaintiffs also allege that 818 owes most of its recognition in the spirits market "to the celebrity influence of its founder, Kendall Jenner," Compl. ¶ 53, rather than to ubiquity in the market. Taking these allegations as true, as the Court must when ruling on a motion to dismiss, 818 lacks the ubiquitous market presence other courts have relied on in sprits cases to dismiss "handcrafted" claims on a motion to dismiss for failure to state a claim. Drawing reasonable inferences in the plaintiffs' favor, a reasonable consumer could

plausibly believe based on the "handcrafted" labeling that 818 tequila is not mass-produced.

818 also argues that any possible ambiguity about its industrial production process is dispelled by its public website, which displays photographs and descriptions of 818's distillery and production facilities. Def.'s Mot. to Dismiss at 16. Consumer protection laws do not impose on average consumers an obligation to question product labels as a lawyer would; "[w]hat matters most [with respect to the reasonable consumer standard] is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 477 (citations omitted). *Bell* itself held that an allegedly misleading front-label representation could not be cured by accurate fine print on a back label. *Id.* Although a consumer certainly could have gone to 818's website to investigate its production process after seeing the "handcrafted" representation on the bottle label, the Court is not prepared to hold as a matter of law that the consumers who failed to do so find themselves beyond the protection of consumer protection laws.

Taking the plaintiffs allegations as true and drawing reasonable inferences in favor of the plaintiffs, the plaintiffs have plausibly alleged that a reasonable consumer could be misled by the "handcrafted" representation.

**c. "Small batch"**

The term "small batch" is too vague to give rise to a viable claim of misleading. The plaintiffs do not identify any quantitative benchmark, industry standard, or regulatory definition against which the accuracy of 818's "small batch" claim could be measured. The plaintiffs' allegations about the size of 818's production facility and overall output do not render false the "small batch" reference, because these points are

distinct from batch size. As the defendants point out, a tequila producer can make millions of bottles of tequila in many small batches or in a few large ones.

The plaintiffs cannot maintain a claim based on the "small batch" representation.

### 3. Statute-specific arguments

#### a. ICFA and WDTPA pecuniary loss

A plaintiff must allege actual pecuniary loss to state a claim under the ICFA and WDTPA. *See Camasta*, 761 F.3d at 739 (ICFA); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 798 (W.D. Wis. 2019) (WDTPA). As discussed above, the plaintiffs have alleged an economic injury in the form of a price-premium overpayment for 818 tequila. They allege that they paid premium price for a tequila represented to be 100% agave, handcrafted, and small batch that they did not in fact receive. The plaintiffs have adequately alleged actual pecuniary loss under the ICFA and WDTPA.

#### b. UDTPA future harm

The UDTPA provides only for injunctive relief. *Astra Imports Co. v. Eagle Distribs., Inc.*, No. 95 C 5626, 1996 WL 685446, at *2 (N.D. Ill. Nov. 21, 1996). As discussed above, the plaintiffs do not have standing to request injunctive relief and their proposed amendments would not give them standing. The plaintiffs' claims under the UDTPA are therefore dismissed.

#### c. ICFA and UDTPA statutory safe harbor

818 argues that the ICFA and UDTPA claims are independently barred by statutory safe harbors. Because the plaintiffs' UDTPA claims have been dismissed due to the plaintiffs' lack standing to pursue injunctive relief, the Court considers only the arguments relating to the ICFA. The ICFA excludes from liability "[a]ctions or

transactions specifically authorized by any regulatory body or officer acting under statutory authority of [Illinois] or the United States." 815 ILCS 505/10b(1). "[I]f a regulatory body acting under specific statutory authority authorizes the use of a term in labeling and advertising, a defendant may not be held liable under the [ICFA] even if the term might be deemed false, deceptive, or misleading." *O'Keefe v. Walgreens Boots All., Inc.*,2020 IL App (5th) 190448, ¶ 14, 172 N.E.3d 1159, 1163 (2020). 818 argues that the TTB's provision of the COLAs for 818 Tequila Blanco, 818 Tequila Reposado, and 818 Tequila Añejo is specific statutory authorization that triggers the ICFA's statutory safe harbor.

In *Price v. Phillip Morris, Inc.*, 219 Ill. 2d 182, 848 N.E.2d 1 (2005), the Illinois Supreme Court held that the phrase "specifically authorized" describes the "substance or content of the authorization," indicating "a legislative intent to require a certain degree of specificity or particularity in the authorization." *Id.* at 243–44, 848 N.E.2d at 38. In *Price*, the Illinois Supreme Court determined that the Federal Trade Commission (FTC) had "specifically authorized all United States tobacco companies to utilize the words 'low,' 'lower,' 'reduced' or like qualifying terms, such as 'light,' so long as the descriptive terms are accompanied by a clear and conspicuous disclosure of the 'tar' and nicotine content," and as a result the defendant tobacco company could not be liable under the ICFA for using those terms on its cigarette packaging. *Id.* at 265–66, 848 N.E.2d at 50–51. To reach this finding, the court devoted over twenty pages of its decision to the history of tobacco regulation, including a discussion of product investigations, recommendations to Congress, reexaminations of the methods used for cigarette testing, and the convening of an FTC "consensus conference" on "low tar" and "light"

tobacco products. *See id.* at 185–208, 848 N.E.2d at 6–19.

Following *Price*, courts in this district interpreting the ICFA have generally determined that specific authorization requires something more than an informal agency action or administrative review. *See Aliano v. Whistlepig, LLC*, No. 14 C 10148, 2015 WL 2399354, at *8 (N.D. Ill. May 18, 2015). A COLA falls short of this where there is no evidence "that the TTB affirmatively investigated or confirmed the validity of the [ ] representation," that the TTB has "established criteria for evaluating the use of [the] term," or that "the TTB label approval process is akin to those in highly regulated tobacco, food and drug industries." *Id.*

In this case, the record does not establish that the TTB affirmatively investigated or otherwise confirmed the validity of the challenged representations before issuing COLAs for 818 tequila. The TTB typically issues COLAs for tequila in reliance on the Mexican CAET. *See* TTB, Country of Origin Certification Requirements, TTB G 2010-16, https://www.ttb.gov/import-export/itd/certificate-of-age-and-origin-requirements-for-imported-alcohol-beverages (last visited Sep. 21, 2026). Under 27 C.F.R. § 4.38(h) and § 5.28, the TTB has authority to request additional information to verify a container's contents during the label approval process for distilled spirits, *id.*, but nothing in the record indicates that the TTB investigated the challenged representations before issuing 818's COLAs. Thus based on the record before the Court at this stage of the case, the plaintiffs' ICFA claims are not barred by the statute's safe harbor provision.

**d. MPCFA and MFSAA public benefit**

The MPCFA and MFSAA do not create private causes of action. *See Wehner v. Linvatech Corp.*, No. 06 C 1709, 2008 WL 495525, at *3 (D. Minn. Feb. 20, 2008).

Instead, private plaintiffs may sue only through Minnesota's Private Attorney General statute, Minn. Stat. § 8.31, subd. 3a, and only if the suit "benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). Minnesota courts evaluate the public benefit requirement through a multi-factor inquiry that weighs the degree to which the alleged misrepresentations affected the public, the form of the misrepresentation, the kind of relief sought, and whether the conduct is ongoing. *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837 (N.D. Ill. 2021). Though a plaintiff need not request injunctive relief to allege a public benefit, "a public benefit typically will be found when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages)." *Buetow v. A.L.S. Enters., Inc.*, 888 F. Supp. 2d 956, 961 (D. Minn. 2012).

As explained above, the plaintiffs lack standing to request injunctive relief. The plaintiffs point out that that a request solely for damages could satisfy the public benefit requirement. This may be true in the abstract, but the plaintiffs make no effort to explain how their request for damages advances the public benefit. Indeed, they argue only that their claims qualify "because they seek to enjoin Defendants' ongoing deceptive labeling, and thus to alter Defendants' conduct and protect future purchasers, *in addition to damages*." Pls.' Resp. at 21 (emphasis added). Thus plaintiffs have premised their public benefit argument on their request for injunctive relief, for which they lack standing. The Court dismisses the plaintiffs' claims under the MPCFA and MFSAA because the plaintiffs have not sufficiently alleged that those claims were brought for the public benefit.

#### e. WDTPA right of action

The WDTPA does not apply to food labeling. *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 545 (Wis. Ct. App. 2005) ("Misrepresentations in the sale of food are addressed solely under Wis. Stat. § 100.183," not the WDTPA). 818 argues that *Gallego* requires dismissal of the plaintiffs' WDTPA claims. *See* Def.'s Mot to Dismiss at 20. The plaintiffs respond that tequila is not a food under *Gallego*, Pls.' Resp. at 21–22, and 818 replies that it is, Def.'s Reply at 15–16. Because 818's argument that tequila is a food under *Gallego* was raised only in its reply, it has waived the point for purposes of this motion to dismiss. The Court concludes that the plaintiffs have stated a claim under the WDTPA.

### D. Common law and equitable claims

#### 1. Negligent misrepresentation

818 challenges the plaintiffs' negligent misrepresentation claims on two grounds. First, 818 argues that negligent misrepresentation requires a duty of care arising from a special relationship of confidence and trust, and it contends that plaintiffs have identified only an ordinary, arm's-length sale of a consumer product. Def.'s Mot. to Dismiss at 21–22. Second, 818 argues that the plaintiffs' claims are barred by the economic loss doctrines of Illinois, Wisconsin, and Minnesota because they allege a purely economic injury. *Id.* at 22.

In response, the plaintiffs concede that Illinois's economic loss doctrine bars their negligent misrepresentation claims, and they fail to respond to 818's arguments regarding the economic loss doctrines of Wisconsin and Minnesota. *See* Pls.' Resp. at 23–24. The plaintiffs argue, however, that the special relationship requirement

identified by 818 is a unique feature of Illinois's economic loss doctrine, which 818 has not shown to be applicable across the other states in the putative multi-state class. Pls.' Resp. at 23; *see also Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 786–87 (N.D. Ill. 2023) (determining the defendant did not owe the plaintiff a duty to communicate accurate information under Illinois law because she alleged only economic injury from the defendant's labeling and failed to show a special relationship with the defendant that would give rise to an extra-contractual duty on the part of the defendant).

The plaintiffs' negligent misrepresentation claims under Illinois, Wisconsin, and Minnesota law are dismissed because the plaintiffs concede those claims are barred by each state's economic loss doctrine. But the plaintiffs also assert the negligent representation claim on behalf of a multi-state class. Because 818 has not shown that the laws of each state in the putative class would similarly bar the plaintiffs' negligent misrepresentation claims, those claims survive. Whether the plaintiffs can represent class members under the negligent misrepresentation laws of the states in the putative multi-state class is an issue to be decided in connection with class certification.

**2. Unjust enrichment**

Unjust enrichment is an equitable remedy, *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022), and federal courts lack equitable jurisdiction where a plaintiff possesses an adequate remedy at law, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, No. 22 C 4148, 2023 WL 3585639, at *15 (N.D. Ill. May 22, 2023). 818 asks the court to dismiss the plaintiffs' unjust enrichment claims because they assert statutory consumer fraud claims and negligent misrepresentation claims which, if viable, would provide the plaintiffs legal relief. Def.'s Mot. to Dismiss at 22.

Federal Rule of Civil Procedure 8(d) permits a plaintiff to plead unjust enrichment in the alternative to legal claims. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically. . . ."). As the plaintiffs note, whether a legal remedy will ultimately prove inadequate cannot be determined now. Thus courts in this district routinely allow unjust enrichment claims to proceed at the pleading stage even where the plaintiff is also pursuing a remedy at law. *See Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149 (N.D. Ill. 2022); *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633 (N.D. Ill. 2022). The Court does the same here.

**E. Abstention**

818 argues in the alternative that the Court should abstain under the international comity and the act of state doctrines. It contends that adjudicating this case would require the Court to "second-guess a foreign sovereign's regulatory certification," namely the Mexican CRT's certification that 818 tequila is "100% agave." Def.'s Mot. to Dismiss at 22–24. The plaintiffs respond that neither doctrine warrants abstention because (1) the CRT certification is not the "official act of a foreign sovereign," and (2) a jury's finding that 818 tequila is adulterated would resolve a factual dispute about the composition of 818 tequila as received by American consumers and would not invalidate the CRT certification. *See* Pls.' Resp. at 24–25.

In the Court's view, the abstention issue turns primarily upon whether the CRT certification constitutes the "official act of a foreign sovereign" and whether a jury's finding that 818 tequila is not in fact 100% agave would invalidate the CRT's certification that it complies with the tequila NOM's standards for 100% agave tequila. The Court will defer ruling on this issue and will set this particular point for oral argument.

## F. Nationwide class allegations

In the alternative, 818 asks the court to strike the plaintiffs' nationwide class allegations based on their common-law negligent misrepresentation and unjust enrichment claims. Def.'s Mot. to Dismiss at 24. "[W]hen pleadings are facially defective and definitively establish that a class action cannot be maintained, the court may properly grant a motion to strike class allegations at the pleading stage." *Stanek v. Saint Charles Cmty. Unit Sch. Dist. No. 303*, 2017 WL 5971985, at *6 (N.D. Ill. Dec. 1, 2017). 818 argues that the plaintiffs' common law claims are unsuitable for nationwide class treatment because under Illinois choice-of-law rules, the laws of all 50 states would govern the proposed class. *See* Def.'s Mot. to Dismiss at 24–25. 818, however, does not adequately support its argument that "[the] plaintiffs' common law claims would require the Court to apply materially different sets of law across the putative class." *Id.* at 25. As another court in this District has explained:

> Where it becomes clear that the substantive laws of different states will govern members of the same class, courts still often decline to strike class allegations at the pleading stage if the challenging party has not shown how differences among state laws would be material. . . . On the contrary, when a defendant offers an undisputed, "in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict," courts may strike nationwide class allegations.

*Daly v. Glanbia Performance Nutrition, Inc.*, No. 23 C 933, 2023 WL 5647232, at *4 (N.D. Ill. Aug. 31, 2023) (collecting cases).

818 has not provided the Court with an analysis of the ways in which the laws of the states comprising the proposed nationwide class conflict. Thus the Court declines to strike the nationwide class allegations at this stage.

## Conclusion

For these reasons, the Court grants 818's Rule 12(b)(1) motion with respect to the plaintiffs' request for injunctive relief, but otherwise denies the motion. The Court grants 818's motion to dismiss the plaintiffs' complaint under Rule 12(b)(6) with respect to the "small batch" allegations; the UDTPA claims; the MPCFA and MFSAA claims; and the Illinois, Wisconsin, and Minnesota negligent misrepresentation claims, but otherwise denies the motion. The Court defers ruling on 818's request for the Court to abstain under the international comity or act of state doctrines at this time and will set the matter for oral argument on that issue. Finally, the Court denies 818's motion to strike the plaintiffs' class action allegations. The telephonic status hearing set for October 8, 2026 is vacated and reset to October 9, 2026 at 8:50 a.m., for the purpose of setting an oral argument date. The following call-in number will be used: 650-479-3207, access code 2305-915-8729.

MATTHEW F. KENNELLY
United States District Judge

Date: October 7, 2026